UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KAYLIN ERIC JOHNSON,<br>　　　Plaintiff,<br>　　v.<br><br>DUNN,<br>　　　Defendants.<br>_____/ | Case No. 23-10224<br><br>Linda V. Parker<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 14)**

**I.   PROCEDURAL HISTORY**

Plaintiff Kaylin Eric Johnson filed this *pro se* prisoner civil rights suit on January 30, 2023. (ECF No. 1). Defendants filed a motion for summary judgment on November 29, 2023. (ECF No. 14). Plaintiff responded. (ECF No. 16).

This case was referred to the undersigned for all pretrial matters. (ECF No. 10).

For the reasons discussed below, the undersigned recommends that Defendant's motion for summary judgment be **GRANTED**.

**II.   BACKGROUND**

Plaintiff was a detainee in the Clare County Jail during the events alleged in the complaint. (ECF No. 14-5, PageID.116). When he was booked on May 17,

2022, he was not on a special diet prescribed by a physician, did not have any food or medicine allergies, and did not have diabetes or any other medical conditions or concerns.  (ECF No. 14-2, PageID.78).  And he was listed as a Christian.  (*Id.* at PageID.76).

On October 20, 2022, Plaintiff sent a request for a vegan meal tray.  (ECF No. 14-3, PageID.81).  He had received meat trays even though he did not want to eat meat or any animal products.  (*Id.*).  He then submitted a grievance saying he has "a right to a healthy diet and to be provided with the food that complies with [his] diet."  (ECF No. 14-5, PageID.116).  He claimed that his religion does not allow him "to eat meat or products that have meat in" them.  (*Id.* at PageID.116).  On October 23, 2022, he submitted another grievance asking for a vegan diet tray saying he "talked to [his] babawa/voodo [sic] priest" and "established [he] need[s] to be not eating meat or any animal products."  (ECF No. 14-7, PageID.121).  He said this was a "recent development."  (*Id.* at PageID.121).

On October 27, 2022, prison administration determined Plaintiff was not entitled to any documented, required, or recommended dietary laws or customs.  (ECF No. 1, PageID.8).

The same day, Plaintiff submitted a religious diet program agreement.  (ECF No. 14-8, PageID.123).  He stated he had sincere faith in the Ifa religion and required a religious dietary accommodation.  (*Id.*).  He said animal products were

"unclean" for his health and practices. (*Id.* at PageID.124). He also said he began his religious process before incarceration and fully embraced it after incarceration. (*Id.*).

Members of the Ifa faith delay their public initiation to the faith until after their release. (ECF No. 14-9, PageID.130). There are "no documented, required, or recommended dietary laws or customs" in the Ifa faith, though it "is sometimes customary to consume food products offered as sacrifices to the Orisha[1] after completion of the sacrificial ritual." (*Id.*).

In his complaint,[2] Plaintiff alleges Lieutenant Dunn has violated his right to a healthy religiously mandated vegan diet. (ECF No. 1, PageID.5). He brings a First Amendment right to religious practice claim and a Religious Land Use and Institutionalized Persons Act (RLUIPA). (*Id.*). He also claims the diet has affected his health and he is now suffering from bleeding in his bowel movements as well as "shame" which has turned him away from his religion. (*Id.* at PageID.6).

In response, Defendant Dunn claims he is entitled to qualified immunity because Plaintiff has not established his First Amendment Free Exercise claim, that

---

[1] The Orisha are important in the Ifa religion. (ECF No. 1409). The Orisha possess "certain quality[ies] or characteristic[s]" of Oldumare (God). (*Id.* at PageID.134).
[2] Plaintiff's complaint is not verified and is not taken as evidence. *Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993).

denying Plaintiff's vegan diet served legitimate penological objectives, and that Plaintiff has failed to state a claim pursuant to the RLUIPA.  (ECF No. 14).

For the foregoing reasons, Defendant's motion for summary judgment should be granted.

### III.   ANALYSIS AND RECOMMENDATIONS

#### A.   Governing Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"

5

*Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

    B.    <u>Qualified Immunity</u>

Defendant argues Plaintiff's claim is barred by qualified immunity. (ECF No. 14). Defendant bears the burden of establishing qualified immunity, and Plaintiff bears the burden of showing that Defendant's conduct violated a right so clearly established that a reasonable official in their position would have clearly understood that they were under an affirmative duty to refrain from this conduct or to act in a certain way. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted). There is a two-part test to determine whether qualified immunity applies. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Defendant must "show the officer's conduct violated a constitutional right" and establish "whether the right was clearly established." *Id.* Judges are "permitted to exercise their

6

sound discretion in deciding which of the two prongs . . . should be addressed first" *Cadogan v. Bell*, 2009 WL1138506 (E.D. Mich. Jan. 28, 2009), however courts have "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Defendant begins his argument by claiming he did not violate Plaintiff's constitutional rights. There is no discussion of whether the right was clearly established, a necessary showing. *Katz*, 533 U.S. 194 (2001).

      i.      Violation of a Constitutional Right

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. Const. Amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Conn.*, 310 U.S. 296, 303 (1940).

To show that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *See Kent v. Johnson*, 821 F.2d 1220, 1224-5 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001). Plaintiff cannot meet this showing.

7

Though the sincerity of a person's religious beliefs is often a question of fact because it "goes to plaintiff's state of mind," this does not "mean[ ] that prisoners are foreordained to win in every case." *Ackerman v. Washington*, 16 F.4th 170, 181 (6th Cir. 2021). Courts need not take a prisoner at his word and can "filter out insincere requests." *Id.*

A prison is "entitled to give some consideration to an organization's tenets" in assessing credibility. *Haight v. Thompson*, 763 F.3d 554, 565-66 (6th Cir. 2014) (internal quotations omitted). Courts may consider "factors like length of adherence, knowledge about the belief system, and the existence of religious literature and teaching supporting the belief." *Ackerman*, 16 F.4th at 181 (internal citations omitted). "[T]he more a person's professed beliefs differ from the orthodox beliefs of his faith, the less likely they are to be sincerely held." *Haight*, 763 F.3d at 565-66. Finally, whether prisoners have "wavered in their dedication" also appears to be relevant to the sincerity analysis. *Fox v. Washington*, 949 F.3d 270, 277-78 (6th Cir. 2020). But this does not mean a religious observer "forfeit[s] his religious rights merely because he is not" completely "scrupulous in his observance." *Ackerman*, 16 F.4th at 181 (quoting *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012).

As a preliminary matter, Plaintiff has brought forth no evidence in response to Defendant's motion for summary judgment, despite his obligation to

8

demonstrate that there is a question of material fact to defeat the motion. As explained below, his failure to marshal evidence dooms his claims.

First, Plaintiff does not show that a vegan diet is required by his religion or that his beliefs are sincerely held. Defendant attaches information from the Federal Bureau of Prisons about the Ifa faith which shows there are no dietary standards for adherents, which weighs against Plaintiff's request. (ECF No. 14-9). Plaintiff did not rebut this with any contrary evidence.

Also, throughout this period, and after his grievances and requests were filed, Plaintiff was purchasing animal products even when there were vegan alternatives. (ECF No. 14-4, PageID.83-114). Plaintiff made no attempt to rebut this evidence. True, strict adherence is unnecessary to find a sincerely held belief, but Plaintiff's voluntary food choices cut against his claim that Defendant infringed on his religious beliefs by not providing a vegan diet. He also stated his diet is "a recent development," and he was a Christian at the time of admission. (ECF No. 14-2, PageID.76); (ECF No. 14-7, PageID.121). These facts weigh against his claim and show he has not adhered to his religion for a long time. Plaintiff does not address these facts in his brief, and fails to meet his burden to show "evidence on which the jury could reasonably find" for him. *Am. Contractors Indem. Co. v. Veterans Constr. Servs., Inc.*, 2021 WL 2156193 (E.D. Mich. May 27, 2021) (citing *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (E.D. Mich.

2004). Because literature does not indicate a vegan diet is necessary for Ifa adherents, Plaintiff does not follow a vegan diet, and because Plaintiff recently adopted his faith shows that vegan meals were nunnecessary and that his belief was not sincerely held. Plaintiff's claim that he had a sincerely held religious belief fails. *United States v. Seeger*, 380 U.S. 163, 185 (1965); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

    ii.  Legitimate Penological Objective

Even if there were a constitutional violation, Defendant is entitled to summary judgment because there was a legitimate penological reason for not providing a vegan diet.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to a legitimate penological interest." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Brown v. Johnson*, 743 F.2d 408, 411-12 (6th Cir. 1984) ("where an inmate's religious freedom is at stake, correctional officials may only adopt regulations which are 'reasonably and substantially' justified by official concern for internal security and inmate discipline").

The Supreme Court laid out four factors "relevant in determining the reasonableness of the [prison] regulation at issue" as follows: (1) whether there is a "'valid rational connection' between the prison regulation and the legitimate

governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally;" and (4) "the absence of ready alternatives" to the regulation for prison officials. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987). And given that "the realities of running a penal institution are complex and difficult," prison officials are afforded "wide-ranging deference" in their decisions about prison administration and regulation as courts are generally ill-equipped to deal with these problems. *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 126 (1977).

Prison officials in this case have a legitimate interest in controlling Plaintiff's diet. In general, there is a legitimate penological interest in controlling the diet of inmates, as "the impact of the allocation of prison resources . . . would be weighty if prisoners participating in the program were able to order and eat whatever food they wanted." *Berryman v. Granholm*, 343 F. App'x 1, 5 (6th Cir. 2009) (officials "have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison."); *Salaam v. Corr. Corp. of Am.*, 21 F. App'x 258, 260 (6th Cir. 2001) ("The avoidance of tailoring each prisoner's diet to his liking is a legitimate interest.").

11

In *Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003), the Court concluded that, in light of a prisoner's "obvious actions in not observing the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility. Similarly, Plaintiff here does not observe his food requirements outside of meals and purchases non-vegan products from the commissary. Defendant here had a legitimate penological interest in controlling Plaintiff's diet.

C. RLUIPA

Plaintiff has not shown a finding under RLUIPA. RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

> A burden shifting framework applies to RLUIPA claims. The plaintiff has the initial burden to make two showings: (1) he or she has a "sincerely held religious belief" and (2) the government's action or policy "substantially burden[s] that exercise" by, for example, forcing the plaintiff "to 'engage in conduct that seriously violates [his or her] religious beliefs.'" *Holt v. Hobbs*, 574 U.S. 352 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 720 (2014)).  If the plaintiff satisfies this burden, the government must then show that its action or policy (1) is "in furtherance of a compelling governmental interest" and (2) "is the least restrictive means of furthering that . . . interest."

*Ackerman*, 436 F. Supp. 3d 1002, 1012 (citing 42 U.S.C. § 2000cc-1).

As established above, Plaintiff fails to meet his burden of showing that he has a sincerely held religious belief that was substantially burdened.  It is also clear that the government has a compelling governmental interest.

Defendant's motion for summary judgment should be granted.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 14) be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 16, 2024.

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on April 16, 2024.

                                        s/Sara Krause  
                                        Case Manager  
                                        (810) 341-7850